IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BAYER U.S., LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:20-cv-431 |
| | ) | |
| HAI "JAMES" ZENG, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Bayer U.S., LLC ("Bayer"), files this action against Hai "James" Zeng ("Defendant" or "Zeng").  In support of its claims, Bayer alleges the following:

### THE PARTIES

1. Bayer U.S., LLC is a Delaware limited liability company whose sole member is Bayer Corporation, an Indiana corporation with its principal place of business in New Jersey.

2. In 2018, Bayer acquired Monsanto Company, a leading St. Louis agricultural chemistry and biotechnology firm.

3. As a result of that transaction, Bayer is the successor of interest of Monsanto and acquired all relevant trade secrets, contractual rights, and causes of action of Monsanto.

### JURISDICTION AND VENUE

4. The Court has subject-matter jurisdiction over Bayer's claims under the Defend Trade Secrets Act ("DTSA") and the Computer Fraud and Abuse Act ("CFAA") pursuant to 28 U.S.C. § 1331.

5. The Court has supplemental subject-matter jurisdiction over Bayer's state-law claims pursuant to 28 U.S.C. § 1367, because the state-law claims all share a common nucleus of operative fact with Bayer's claims under the DTSA and the CFAA, as described below.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1), because, on information and belief, Defendant resides and is domiciled within this judicial district.

7. Venue is proper in this judicial district under 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claims asserted in the Complaint occurred in this judicial district and a substantial part of the property that is the subject of this action is situated within this judicial district.

## FACTS COMMON TO ALL COUNTS

### *Zeng's Employment and Employment Agreement with Bayer*

8. On or about October 19, 2016, Zeng began working for Monsanto, Bayer's predecessor in interest, as a Business Architect (Supply Chain).

9. Zeng principally performed his work for Monsanto and Bayer from a facility located in St. Louis County, Missouri.

10. In connection with his Monsanto employment and as a condition of employment, Zeng executed an Employment Agreement.

11. A true and accurate copy of that Employment Agreement is attached as Exhibit A hereto and incorporated by reference herein.

12. In the Employment Agreement, Zeng agreed to "comply with the policies and procedures of Monsanto, including those relating to security and employee conduct."

13. In the Employment Agreement, Zeng agreed to use his best efforts and diligence both during and after his employment to protect the confidential, trade secret, and/or proprietary character of all company confidential information.

14. He also agreed not to use or disclose, either directly or indirectly, any confidential information, except as necessary for the performance of his job duties.

15. In the Employment Agreement, Zeng agreed not to "engage in any business or technical activity, or plan any such activity, competitive with or in conflict with the business interests of Monsanto Company or any Subsidiary [of Monsanto]."

16. Zeng agreed that the Employment Agreement "is assignable by Monsanto and is enforceable by Monsanto's successors and assigns."

17. In his Employment Agreement, Zeng agreed that "[i]n the event that Monsanto successfully enforces any part of this Agreement through legal proceedings, I agree to pay to Monsanto all costs and attorneys' fees reasonably incurred by it in that endeavor."

### *Discovery of Zeng's Misappropriation of Trade Secrets and Confidential Materials*

18. On or about April 11, 2018, Bayer's internal data-security system alerted the company that Zeng had sent messages over his corporate email account, including to other company employees, relating to participation in a multi-level marketing arrangement.

19. These messages had no legitimate relationship to Zeng's job duties and appeared to violate company policies.

20. Based on this alert, Bayer's internal security team conducted a preliminary review of Zeng's use of the company's computer systems and data.

21. That review revealed several violations of the company's Information Security Policy, including the unauthorized use of a proxy web browser application on a Bayer device.

22. Bayer's internal security team also discovered that Zeng had deleted applications, application data, credentials, and files from his Bayer iPhone, in violation of company policy and in an apparent effort to prevent the company from discovering those files.

23. Bayer's data security team also discovered that Zeng had appropriated hundreds of confidential Bayer files and documents by transmitting the files to his personal email accounts and/or by uploading the files to his personal Dropbox account.

24. The removal of these confidential files from Bayer's secure data environment was not authorized, and it violated both Zeng's Employment Agreement and the company's data-security policies.

25. These hundreds of confidential files included a wide range of sensitive information regarding Bayer's operations, products, business plans, and other highly confidential information.

26. For example, one file taken by Zeng (the "Scheduled Data Sheets") contained information outputs from a confidential, proprietary data optimization model that Monsanto used to develop its production, supply, and distribution plans.

27. The data contained in the Scheduled Data Sheets could be used to determine the company's future production and inventory plans, include location-specific inventory information, as well as other confidential information about the company's prospective business strategy.

28. The data contained in the Scheduled Data Sheets derived substantial economic value from remaining secret.

29. Among other things, a competitor could use detailed information about Monsanto's future inventory plans—including location-specific inventory plans—to more effectively compete with Monsanto and to predict Monsanto's future pricing.

30. A competitor also could potentially mirror the inventory and supply strategies manifested in the Scheduled Data Sheets, thereby free riding off of the substantial investments

4

that Monsanto made to generate the underlying algorithms and to collect the data inputs used by the model.

31. A competitor also could potentially use the output data reflected in the Scheduled Data Sheets in an effort to reverse-engineer Monsanto's underlying data optimization model. Monsanto invested substantial resources in developing that data optimization model.

32. As another example, Zeng took a Monsanto customer information database (the "Customer Database") identifying hundreds of customers within a particular geographic region, along with the names, telephone numbers, and email addresses for the particular individuals who served as contacts for these customers.

33. Monsanto invested substantial resources in creating and curating the Customer Database, which was based on Monsanto's past business contacts with the companies identified in the document and other Monsanto business intelligence.

34. The Customer Database derived substantial economic value from remaining secret.

35. Among other things, a competitor could use this detailed customer database to facilitate effective customer outreach and marketing, without having to make the substantial investment made by Monsanto to create the database.

36. At all relevant times, Bayer has taken reasonable measures to preserve the confidentiality of these and other confidential materials appropriated by Zeng, including contractual non-disclosure obligations applicable to all persons having access to the materials; detailed policies governing the use and dissemination of confidential materials; and an internal data-security system calculated to identify suspicious access and use of confidential data.

37. On or about October 1, 2018, Bayer suspended Zeng, with pay, from his job duties pending an internal investigation.

## COUNT I:
## VIOLATIONS OF THE COMPUTER
## FRAUD AND ABUSE ACT ("CFAA")

38. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 37 as if fully stated herein.

39. The Computer Fraud and Abuse Act ("CFAA") provides that "[a]ny person who suffers damage or loss by reason of a violation of [18 U.S.C. § 1030] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).

40. A person violates § 1030 if he or she, among other things:

   a. "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . (C) information from any protected computer." 18 U.S.C. § 1030(a)(2).

   b. "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period." 18 U.S.C. § 1030(a)(4).

   c. "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damages without authorization, to a protected computer." 18 U.S.C. § 1030(a)(5)(A).

  d. "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss." 18 U.S.C. § 1030(a)(5)(C).

41. Zeng violated § 1030(a)(2) in that, among other things:

  a. Zeng intentionally accessed one or more Bayer computers for the purpose and with the effect of uploading, transmitting, and otherwise appropriating confidential Bayer data without or beyond proper authorization;

  b. The appropriation of that confidential Bayer data violated Zeng's duties and obligations to Bayer, and Zeng engaged in such conduct to advance his own interests at the expense of Bayer's interests. Thus, Zeng's access to Bayer's computers was without authorization and/or exceeded authorization;

  c. Zeng did not have authorization to obtain the confidential Bayer data that he appropriated;

  d. As a result of this conduct, Zeng obtained information from one or more Bayer computers that were connected to the Internet and that were otherwise used in and/or affecting interstate and/or foreign commerce;

42. Zeng violated § 1030(a)(4) in that, among other things:

  a. Zeng knowingly accessed one or more Bayer computers that were connected to the Internet and that were otherwise used in and/or affecting interstate and/or foreign commerce for the purpose and effect of uploading, transmitting, and otherwise appropriating confidential Bayer data;

  b. The appropriation of that confidential Bayer data violated Zeng's duties and obligations to Bayer, and Zeng engaged in such conduct to advance his own

   interests at the expense of Bayer's interests.  Thus, Zeng's access to Bayer's computers was without authorization and/or exceeded authorization;

 c. Zeng did not have authorization to obtain the confidential Bayer data that he appropriated;

 d. As a result of this conduct, Zeng obtained numerous confidential Bayer documents having substantial independent economic value, many of which Zeng could have used to generate revenue in excess of $5,000 over the course of one year;

 e. Zeng acted with the intent to defraud Bayer of the ownership, exclusive use, and profits derivative of its confidential and proprietary materials, and he carried out this fraud via, at a minimum, fraudulent material omissions through his failure to disclose to Bayer that he had misappropriated the confidential materials and his failure to disclose to Bayer that he was violating his obligations and duties of loyalty to Bayer.

43.  Zeng violated § 1030(a)(5)(A) in that, among other things:

 a. Zeng knowingly transmitted a program, information, code, and/or command that caused the deletion of data from one or more Bayer electronic devices;

 b. The deletion of those data violated Zeng's Employment Agreement and Bayer's data policies, and Zeng engaged in that deletion activity for his personal purposes, at the expense of Bayer's interests.  In particular, on information and belief, Zeng deleted these data in an effort to prevent Bayer from identifying violations of Bayer's data policies;

 c. This data deletion was not authorized;

    d. Through this data deletion, Zeng intentionally caused damage to the relevant Bayer electronic devices;

    e. The relevant Bayer electronic devices were connected to the Internet and were otherwise used in and/or affecting interstate and/or foreign commerce.

44. Zeng violated § 1030(a)(5)(C) in that, among other things:

    a. Zeng intentionally accessed one or more Bayer electronic devices for the purpose of deleting data from those devices;

    b. The deletion of those data violated Zeng's Employment Agreement and Bayer's data policies, and Zeng engaged in that deletion activity for his personal purposes, at the expense of Bayer's interests.  In particular, on information and belief, Zeng deleted these data in an effort to prevent Bayer from identifying violations of Bayer's data policies;

    c. This data deletion was not authorized;

    d. Through this data deletion, Zeng intentionally caused damage to the relevant Bayer electronic devices;

    e. This data deletion activity caused loss to Bayer, as described below;

    f. The relevant Bayer electronic devices were connected to the Internet and were otherwise used in and/or affecting interstate and/or foreign commerce.

45. Bayer has sustained losses as a result of Zeng's violations of § 1030, including but not limited to:

    a. the diversion of substantial and valuable employee time and efforts to investigate Zeng's violations and to determine the need for additional remedial steps to protect Bayer's confidential and proprietary materials;

    b. the retention of a third-party forensics investigation firm to investigate Zeng's violations and to determine the need for additional remedial steps to protect Bayer's confidential and proprietary materials, to whom Bayer has paid more than $20,000, including more than $5,000 in a single one-year period;

    c. the retention of outside counsel to investigate Zeng's violations and to determine the need for additional remedial steps to protect Bayer's confidential and proprietary materials;

    d. Compensation paid to Zeng pending the results of the investigation that confirmed Zeng's threat to the company's intellectual property.

46. A plaintiff may bring a civil claim under the CFAA "if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of [18 U.S.C. § 1030(c)(4)(A)(i)." 19 U.S.C. § 1030(g).

47. Subclause (I) applies to violations involving "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I).

48. Zeng's violations of § 1030 have caused Bayer to sustain losses in excess of $5,000 during a one-year period, including the losses described above.

WHEREFORE, Bayer seeks a judgment against Zeng for compensatory damages; permanent injunctive relief; and such further relief as the Court deems just and appropriate.

## COUNT II:
## MISAPPROPRIATION OF TRADE SECRETS
## UNDER THE DEFEND TRADE SECRETS ACT OF 2016

49. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 48 as if fully stated herein.

10

50. Under the DTSA, the "owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

51. The DTSA defines the term "trade secrets" to include "all forms and types of" information, regardless of how it is stored, if "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information[.]" 18 U.S.C. § 1839(3).

52. Multiple documents appropriated by Zeng—including the Scheduled Data Sheets and the Customer Database—constitute trade secrets within the meaning of the DTSA.

53. Zeng "misappropriated" these trade secrets within the meaning of the DTSA by, at a minimum, acquiring them through improper means.

54. Zeng removed the trade secrets from Bayer's secure server, placed them onto his own personal electronic accounts and devices, and exercised dominion and control over those materials, all in violation of his contractual obligations to Bayer and Bayer's policies.

55. Bayer owns the trade secrets misappropriated by Zeng.

56. The trade secrets misappropriated by Zeng are used in and are intended for use in interstate and/or foreign commerce.

57. The files and data removed by Zeng are valuable to the Bayer and to anyone else in possession of the information, and would afford an actual or potential economic advantage over other persons or entities engaged in the same or similar business as Bayer.

58. As described above, Bayer has implemented reasonable and appropriate measures to preserve the secrecy of these materials.

59. As a result of Zeng's misappropriation and unauthorized removal of the confidential, proprietary, and trade-secret information described above, Zeng has violated the DTSA.

60. As a direct and proximate result of Zeng's violations of the DTSA, Bayer has incurred and is likely to incur damages.

61. In misappropriating Bayer's trade secrets, Zeng acted willfully, wantonly, maliciously, and with reckless disregard for the rights of Bayer.

WHEREFORE, Bayer seeks a judgment against Zeng for compensatory and exemplary damages, an award of unjust enrichment, permanent injunctive relief, prejudgment interest, an award of costs and reasonable attorneys' fees, and such other relief as the Court deems just and proper.

## COUNT III:
## VIOLATION OF THE MISSOURI UNIFORM TRADE SECRETS ACT

62. Bayer re-alleges and incorporates by reference paragraphs 1 through 61 as if fully alleged herein.

63. The Missouri Uniform Trade Secrets Act ("MUTSA"), RSMo §§ 417.450 to 417.467, provides injunctive relief for the actual or threatened misappropriation of trade secrets. *Id.* at § 417.455.

64. Under the MUTSA, Plaintiff is also entitled to recover damages for the misappropriation of trade secrets, which can include both the actual loss caused by the misappropriation and the unjust enrichment caused by the misappropriation that is not taken into account in computing actual loss. *Id.* at § 417.457(1).

65. If the misappropriation is deemed outrageous because of the misappropriator's evil motive or reckless indifference to the rights of others, the Court may award punitive damages. *Id.* at § 417.457(2).

66. Multiple documents appropriated by Zeng—including the Scheduled Data Sheets and the Customer Database—constitute trade secrets within the meaning of the MUTSA.

67. Zeng has misappropriated those trade secrets under the MUTSA by, at a minimum, acquiring them through improper means.

68. Zeng removed the trade secrets from Bayer's secure server, placed them onto his own personal electronic accounts and devices, and exercised dominion and control over those materials, all in violation of his contractual obligations to Bayer and Bayer's policies.

69. The files and data removed by Zeng are valuable to the Bayer and to anyone else in possession of the information, and would afford an actual or potential economic advantage over other persons or entities engaged in the same or similar business as Bayer.

70. As described above, Bayer has implemented reasonable and appropriate measures to preserve the secrecy of these materials.

71. As a result of Zeng misappropriation and unauthorized removal of the confidential, proprietary, and trade-secret information described above, Zeng has violated the MUTSA.

72. As a direct and proximate result of Zeng's violations of the MUTSA, Bayer has incurred and is likely to incur damages.

73. In misappropriating Bayer's trade secrets, Zeng has acted willfully, wantonly, maliciously, and with reckless disregard for the rights of Bayer.

WHEREFORE, Bayer seeks a judgment against Zeng for actual and punitive damages, an award of unjust enrichment, permanent injunctive relief, and such further relief as the Court deems just and proper.

## COUNT IV:
## BREACH OF CONTRACT

74. Bayer re-alleges and incorporates by reference paragraphs 1 through 73 as if fully alleged herein.

75. There existed between Bayer and Zeng an Employment Agreement that constitutes a valid contract, with offer and acceptance, and supported by consideration, a true and accurate copy of which is attached hereto as Exhibit A and is incorporated by reference.

76. Consideration supporting Zeng's obligations under the Employment Agreement included, among other things, Zeng's employment with Monsanto/Bayer and the substantial compensation and employee benefits that he received as a result of that employment.

77. Monsanto and Bayer have fully performed their obligations under the Employment Agreement.

78. In his Employment Agreement, Zeng agreed to "use [his] best efforts and diligence both during and after [his] employment to protect the confidential, trade secret and/or proprietary character of all Confidential Information."

79. In the Employment Agreement, Zeng agreed to "comply with the policies and procedures of Monsanto, including those relating to security and employee conduct."

80. Zeng breached these covenants by surreptitiously taking Bayer's trade secrets and confidential information.

81. Bayer has sustained and will continue to sustain financial losses as a direct and proximate result of Zeng's breaches of the Employment Agreement.

82. In his Employment Agreement, Zeng expressly agreed that "[i]n the event of a breach or a threatened or intended breach of this Agreement by [Zeng], [Bayer] shall be entitled . . . to injunctions, both preliminary and final, enjoining and restraining such breach or threatened or intended breach."

83. Zeng "consent[ed] to the issuance [of preliminary and permanent injunctions] without [Bayer] being required to post any bond."

84. Zeng further agreed that "[i]n the event that [Bayer] successfully enforces any part of this Agreement through legal proceedings, [Zeng will] pay to [Bayer] all costs and attorneys' fees reasonably incurred by it in that endeavor."

WHEREFORE, Bayer seeks a judgment against Zeng for compensatory damages, prejudgment interest, permanent injunctive relief, and such other relief as the Court deems just and proper.

## COUNT V:
## CONVERSION

85. Bayer re-alleges and incorporates by reference paragraphs 1 through 84 as if fully alleged herein.

86. Bayer is the rightful owner of the confidential and proprietary information taken by Zeng, including the Scheduled Data Sheets and the Customer Database.

87. Zeng wrongfully possesses Bayer's confidential and proprietary information.

88. Zeng wrongfully took possession with the intent to exercise control over Bayer's confidential and proprietary information in a manner inconsistent with Bayer's ownership, entitlement to, and control of such information.

89. As a direct and proximate result of Zeng's conversion of Bayer's confidential and proprietary information, Bayer has sustained and is likely to incur damages.

90. The value of Bayer's confidential and proprietary information derives in large part from its exclusive use by Bayer and its employees. By wrongfully asserting dominion and control over Bayer's proprietary information, Zeng has diminished and threatens to further diminish its monetary value.

WHEREFORE, Bayer seeks a judgment against Zeng for compensatory and punitive damages, prejudgment interest, and such other relief as the Court deems just and proper.

## COUNT VI:
## REPLEVIN

91. Bayer re-alleges and incorporates by reference paragraphs 1 through 90 as if fully alleged herein.

92. Bayer is the rightful owner of the confidential and proprietary information taken by Zeng, including the Scheduled Data Sheets and the Customer Database.

93. Zeng wrongfully possesses Bayer's confidential and proprietary information.

94. Zeng wrongfully took possession with the intent to exercise control over Bayer's confidential and proprietary information in a manner inconsistent with Bayer's ownership, entitlement to, and control of such information.

95. As a direct and proximate result of Zeng's conversion of Bayer's confidential and proprietary information, Bayer has incurred and is likely to incur damages.

96. The value of Bayers's confidential and proprietary information derives in large part from its exclusive use by Bayer and its employees. Failing to return and not retain Bayer's confidential and proprietary information diminishes and threatens to further diminish its monetary value.

WHEREFORE, Bayer seeks a judgment against Zeng for compensatory and punitive damages, an order compelling the return of all materials wrongfully appropriated by Zeng and/or

the permanent and irreversible deletion of such materials from any device or account to which Zeng has access, prejudgment interest, and such other relief as the Court deems just and proper.

## COUNT VII:
## VIOLATION OF THE MISSOURI COMPUTER
## DATA ACCESS AND FRAUD STATUTE, § 537.525, RSMo

97. Bayer re-alleges and incorporates by reference paragraphs 1 through 96 as if fully alleged herein.

98. As described above, Zeng knowingly and without authorization:

   a. modified and destroyed data residing or existing internal to a computer, computer system, and/or computer network;

   b. took data residing or existing internal or external to a computer, computer system, and/or computer network; and

   c. retained data known to have been obtained in the ways described above.

99. This conduct violated § 569.095, RSMo.

100. Bayer owns the data, computers, computer systems, and computer networks described in the foregoing paragraphs.

101. As a result of the foregoing conduct, Bayer sustained damages, including expenditures reasonably and necessarily incurred to verify the scope of the damage and any necessary remedial steps, as described above.

WHEREFORE, Bayer seeks a judgment against Zeng for compensatory damages, prejudgment interest, attorneys' fees, and such other relief as the Court deems just and proper.

Respectfully submitted,

HUSCH BLACKWELL, LLP

*/s/ Michael Martinich-Sauter*
Joseph Orlet, 37732MO
Michael Martinich-Sauter, 66065MO
190 Carondelet Plaza, Suite 600
St. Louis, Missouri  63105
T: 314.480.1500 / F: 314.480.1505
michael.martinich-sauter@huschblackwell.com